## Thomas A. Hill *vs.* William Woodman *&* als.

A demise in writing not under seal, of certain premises for a stipulated term by one party, is a sufficient consideration for an express promise in the same writing by the other to pay rent therefor.

Where a demise of a wharf was made to hold for the term of five years, without any agreement by the lessor to put, or keep, the same in repair, and the lessee agreed to pay a fixed rent quarterly therefor during the term; and after the execution of the lease and before entry into possession under it, a large proportion of the wharf was destroyed through natural decay; and the lessee notified the lessor of that fact, and requested him to put the same in repair, and, on his neglect, refused to enter upon the residue of the premises or to pay rent; *it was held,* that the lessor was nevertheless entitled to recover the amount of the rent agreed to be paid.

THE action was *assumpsit* brought to recover three quarters' rent on a lease dated, *October* 1, 1833.   The instrument declared on was in the common printed form of a lease, signed by both parties, but no seals were affixed to it, and by its terms leased, demised and let unto the defendants the premises therein described for the term of five years, commenceing on the twenty-second of *May*, 1834, " yielding and paying therefor the rent of one hundred and seventy-five dollars per year, and the lessees do covenant to pay

the said rent in quarterly payments at the end of every three months during said term, and to quit and deliver up the premises to the lessor, or his attorney, peaceably and quietly, at the end of the term in as good order and condition, (reasonable use or wearing thereof, or inevetible accident excepted,) as the same are, or may be put into by the said lessor, and to pay all taxes, and not to make or suffer any waste thereof." The three quarters had expired before the suit was brought.

The defendants introduced a former lease of the same premises dated the 22d of *June*, 1833, for the term of eleven months, at the rent of $75,00 per annum payable quarterly. This lease was in form similar to the other.

The defendants then proved that the lot leased by the plaintiff to the defendants was situated on the *Kenduskeag stream* in *Bangor*, and was covered with a wharf on which stood a small building for a store-house; that the value of the property to a lessee arose principally from the wharf, as a place of deposite of goods and lumber, the access to which was from the public street; that before the arrival of the period when the premises were to be enjoyed under the lease sued, but after its execution, a large proportion of the leased premises, to wit, forty feet of the wharf in length, and of the breadth of the whole lot, through the natural decay of the material of which it was composed, was destroyed; that in consequence of the destruction of this part of the premises the residue of them could not be approached without a circuitous route, and over the property of others, except by water, and that by water it could not be approached beneficially. And the defendants further offered to prove, that they called upon the plaintiff immediately after the destruction of the premises and while they were lessees under the first lease, to put the premises in a situation similar or equal to what they were in when the lease was executed; that the plaintiff neglected to rebuild the wharf, and that thereupon and before the arrival of the period, when the defendants were to enjoy the leased premises, abandoned their possession of them, notified the plaintiff of their election to do so, and have never since claimed or occupied them; that the premises on the 1st *Oct.* 1833, and on the 22d *May* 1834, were essentially different in character and value; that at the latter date they were of little or no value, to the

defendants, and that in consequence of the change, and the neglect of the plaintiff to repair them within a reasonable time, they hired other premises in lieu thereof. The plaintiff proved that in another action between the same parties for the first quarter's rent on the lease of *Oct.* 1, 1833, the defendants brought a sum of money into Court. A default was entered by consent, it being agreed, that if in the opinion of the Court, the foregoing facts, if proved, furnish matter of defence, the default was to be set aside and the action stand for trial; otherwise judgment is to be rendered for the plaintiff.

*Rogers,* for the defendant.

This is a question of construction of the instrument declared on.

The intention of the parties is to govern. This is a familiar principle, and but a few cases will be cited to show the extent of it.   8 *Mass. R.* 179 ; 10 *Mass. R.* 379 ; 11 *Mass. R.* 302 ; 1 *Pick.* 332.   The contract was conditional and the payment of rent was to depend upon the enjoyment of the property. And such is the language of it, " yielding and paying rent *therefor*." The parties must have understood the contract to have been reciprocal and mutual.   9 *Mass. R.* 78 ; 11 *Mass. R.* 302 ; 15 *Mass. R.* 500 ; 2 *Stark. Ev.* 90, *note M and cases cited.*

There is a good defence to this action from failure of the consideration of the contract. It is under seal, and the consideration may be inquired into. Here was a destruction of the property from causes against which the defendants were not bound to guard, before the time fixed in the contract for the enjoyment of the property had arrived. It is like the case, where one party stipulates, that the other shall have an article at a future day, or a sale of property to be delivered at a coming day. The property here being destroyed without fault of the defendants, there is an entire failure of the consideration on which the promise was made.   1 *Com. Dig.* 297, *Day's ed. and note* ; 7 *Dowl. & R.* 117 ; 1 *Moody & Rob.* 112.

The payment of money into Court merely admits, that the suit can be maintained for the sum brought in. It is only evidence in that case, and not in any other. It has no more to do with this case, than the verdict in the other case has.

The effect of payment of money into Court has undergone some alterations, but the present doctrine of the Courts is as above stated.

2 *H. Black. R.* 374; 1 *Camp. R.* 557; 1 *Taunt.* 419; 1 *T. R.* 464; 2 *T. R.* 275; 2 *Wend.* 431; 3 *Stark. on Ev.* 1004, *and cases cited;* 1 *Phil. Ev.* 149.

*Starrett,* for the plaintiff.

Here the repairs were in fact made within a reasonable time, and the real question in dispute was, whether so made or not. But this case must be decided on the facts appearing on paper. When there is a written lease, it is not necessary for the plaintiff either to allege or prove an entry or occupation under it, the defendants being parties to it. *Oliver's Prec. of Dec.* 408, 442; *Chitty on Con.* 207; 4 *Har. & Johns.* 564.

If the law be correctly stated on the other side, still there is no defence; it was not an entire destruction of the property, and the remedy would have been by an action for not repairing. 11 *Johns. R.* 495.

But this is a lease, strictly and technically, and a seal is wholly unnecessary. *Jacob's Law Dic., Title, Lease.* Nor is it necessary, that the party should have the immediate right to enter under the lease to give it that character. *Ibid.* This is a lease, and has all the qualities of one, but even an agreement to give a lease, where no other paper is contemplated by the parties, has been held to be a lease. 3 *Johns.* 44.

This lease contains no stipulations on the part of the plaintiff to make repairs, but on the contrary, there are covenants that the defendant shall keep the premises in repair. The plaintiff certainly is not bound to make repairs. 6 *Mass. R.* 63; 16 *Mass. R.* 238; 3 *Johns. R.* 44; 4 *Taunt.* 45; 18 *Vesey,* 115; 3 *Kent,* 2d ed. 467; *Com Dig. Waste, D.* 2; 4 *Dane,* 382; 6 *Cowen,* 475. It is sufficient in this action, that the plaintiff is not bound to repair, as the defendant has expressly contracted to pay rent.

The payment into Court of the money due at the time on this lease, is evidence, as between these parties, in all controversies in relation to it, of its existence at the time, as a valid contract.

The action was continued for advisement, and the opinion of the Court afterwards drawn up by

WESTON C. J. — On the twenty-second of *June,* 1833, the defendants took from the plaintiff a lease of the premises in contro-

versy, for the term of eleven months ; and on the first day of *October* of the same year, for the further term of five years, at and from the termination of the first lease. Although the term covenant is used in both instruments, the parties did not affix their seals to either. The annual rent, to be paid quarterly, is increased in the second lease one hundred dollars. In all other respects, except as to time, the stipulations in both are alike. By the first the defendants purchased a leasehold estate for eleven months ; and by the second, that estate was extended and enlarged five years.

Such was the effect of the second lease. The defendants were, at the time of its execution, in the full possession and enjoyment of the premises, which they were to hold in continuation, until the expiration of the second period. Express covenants for the payment of rent, and for repairs, have been frequently before the Courts ; and their effect has been well settled by authority. The affixing or withholding a seal, cannot vary the intention of the parties, or change the construction. In instruments, however, not under seal, the consideration may be gone into ; and much of the argument of the defendants' counsel turns upon that distinction. What was the consideration for the express promises made by the defendants in the second lease ? It was the demise, made to them of the premises by the plaintiff, for the further period of five years. They well knew the nature and condition of the estate. It had been in their actual possession for more than four months. It is not pretended, that any fraud or deception was practised upon them by the plaintiff. The lease was formally drawn, and consists of two parts, interchangeably executed.

On the part of the lessor is the demise ; on the part of the lessees are many stipulations ; among others, not to make or suffer any waste in the premises ; and to surrender them up at the end of the term, in as good a condition as they then were, by which must be understood, at the time of the execution of the lease, reasonable use and wearing thereof, or inevitable accident, excepted. The lessor made no stipulation to repair. That duty was assumed by the lessees. And if the injury, of which they complain, falls within the exception, they exacted no promise of the lessor to make it good. They must abide by such a contract as they have made.

They took the premises for better or worse; and they had the most ample means of ascertaining their condition.

The injury is directly within the definition of permissive waste. 2 *Bl. Com.* 281. In *Com. Dig. Waste, D.* 2, it is put as an example of permissive waste, if a house, ruinous at the commencement of a lease, is suffered by the lessee to become more ruinous. It is to be remembered, that the stipulation by the lessees, not to make or suffer any waste, is in both leases, and that the injury of which they complain, happened, while they were in possession under the first lease, for the want of necessary repairs.

We cannot perceive any want or failure of consideration. The demise is sufficient to sustain all the promises, made by the lessees. If they had intended to be holden only so long, as the premises were kept by the lessor in the condition in which they received them, they should have required an express engagement from him to this effect. In *Hopkins* v. *Young*, 11 *Mass.* 302, cited for the defendants, *Jackson J.* puts a number of cases, where a party had covenanted to assign and convey a valuable thing, and before the time prescribed for the conveyance, he destroys the thing or renders it of no value, which was adjudged in each case a breach of covenant. Here the plaintiff has done nothing to impair the value of the premises. Nor was the contract on his part an engagement to convey at a future day. The lease was itself a continuance and enlargement of a leasehold interest in an estate, then in the actual possession of the lessees.

Express covenants, to keep the demised premises in repair, and to surrender them in that condition, have been held binding upon the party covenanting, although they have been burnt or destroyed, without any fault in him. With this class of covenants, we have at present nothing to do, except so far as they afford examples of the strictness, with which express covenants in leases have been enforced. But there is no occasion to resort to analogies of this sort. Authorities are to be found directly in point, in relation to covenants to pay rent.

*Sergeant Williams,* 2 *Saunders,* 422, *note* 2, says, where a tenant covenants to repair, casualties by fire or tempest excepted, if he also covenants to pay rent, he shall be holden to pay, notwithstanding the premises may be burnt or blown down. And even

assuming, that in such case the lessor is under obligation to repair, and he fails to do so, it has been adjudged that the lessee is bound to pay rent, upon his express covenant. *Monk* v. *Cooper*, 2 *Strange*, 763; 2 *Lord Raymond*, 1477, same case; *Belfour* v. *Weston*, 1 *T. R.* 310. But in such case, it seems the lessor is not bound to repair; although he may insist upon the payment of rent. *Pindar* v. *Ainsby*, cited in 1 *T. R.* 312. *Weigall* v. *Waters*, 6 *T. R.* 488. And in *Hare* v. *Groves*, 3 *Anstr.* 687, the same doctrine has been settled in equity, although it had previously been doubted there.

In the case before us, the lessees have made an express promise to pay rent; and we find nothing to relieve them from the obligation it imposes.

*Judgment for plaintiff.*