DAVID ROSEN *vs.* FREDERICK W. BURNHAM.

Franklin.　September 17, 1930. — October 2, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Landlord and Tenant*, Negligence of landlord on adjoining premises.

At the trial of an action of tort by a tenant against his landlord for damage caused to merchandise in the plaintiff's store from operations by the defendant in the making of repairs and alterations in parts of the building not included in the premises let to the plaintiff, there was evidence of falling plaster following hammering done for the defendant; that the defendant, after seeing the damage done

thereby, said "he was going to make that good"; that later rain came through holes thus made; and that later when men were working near a chimney, "dust and soot came in through the ventilator opening entering the chimney and covered things." There also was evidence excluding other causes for the damage thus caused. The judge charged the jury that there was no sufficient evidence to warrant a verdict for the plaintiff because of the fall of plaster, rain water, or soot from the ventilator. *Held,* that

(1) There was evidence that the plaintiff suffered damage from the fall of plaster, the rain water, and the "soot entering through the ventilator," and also that this damage was caused by the negligence of the defendant's agents;

(2) The instructions to the jury as to such damage were erroneous.

Tort. Writ dated August 12, 1927.

In the Superior Court, the action was tried before *Broadhurst,* J. Material evidence and rulings by the trial judge are described in the opinion. There was a verdict for the plaintiff in the sum of $1,000. The plaintiff alleged exceptions.

The case was submitted on briefs.

*C. Fairhurst,* for the plaintiff.

*H. J. Field,* for the defendant.

Carroll, J. The plaintiff's action of tort against his landlord is to recover damages caused to his stock of merchandise by the negligence of the defendant in making repairs and alterations to the building occupied in part by the plaintiff. The premises leased to the plaintiff consisted of the first floor of the building, the basement and a part of the second story. The alterations included, among others, changing the rear of the building from a two-story to a four-story building. None of this work involved any invasion of the plaintiff's premises. The plaintiff introduced evidence of damages suffered from March to October, 1923, (1) by the fall of plaster, (2) rain water, (3) soot from the ventilator, (4) water damage by mortar bed overflow, (5) breaking through the ceiling by a workman, and (6) plugging chimney with debris. The judge charged the jury that there was no sufficient evidence to warrant a verdict for the plaintiff for the first three named causes, but did allow them to consider the damages caused by the mortar bed overflow, the breaking through the ceiling by a workman, and the plugging of

the chimney with debris. There was a verdict for the plaintiff for $1,000. He excepted.

There was evidence tending to show that in March, 1923, the defendant "through his agent Thomas J. Gass and about fifteen workmen, began extensive alterations on this block." The plaintiff testified as follows: "The first damage was the plaster coming down in the millinery department on the second floor rear." In March, 1923, he "heard a noise, went upstairs, saw a lot of plaster, dust, clouds of it." A section of the plaster the full length of the millinery department in the rear had fallen on the merchandise; this happened about eleven o'clock in the forenoon. Plaster fell many times; the defendant was shown the damage done, and "was going to make that good . . . [the plaintiff] used to call Mr. Gass whenever there was trouble, called him many times" and he had "his men to pick up the plaster." Before the plaster fell the plaintiff "heard noises. They were hammering all the time," but he did not remember that he heard hammering on the thirteenth of March. "Finally Burnham's men put up a cloth to hold the plaster up." On April 28 it rained all night and "the water came through on the underwear" in the department in the rear of the second floor. The day before the men had been working in the building and "no precautions that . . . [the plaintiff knew] of were taken by them to protect [the plaintiff's] goods from the elements." "They were raising the building over this hosiery department two floors. . . . [He] saw the rain coming through on the side of the walls." On August 10 the men were working at or near the chimney; on that day "dust and soot came in through the ventilator opening entering the chimney and covered things." There was other evidence that while work was going on near the chimney "the soot carried into the millinery department."

It appeared that on March 7 there was a fire in a room over the plaintiff's store and that "Some chemicals and water were used by the fire department to extinguish this fire." There was evidence that the ceiling where the plaster fell was not "in any way affected by that fire or by water then used." There was no affirmative evidence "that the fire

or water then used in any way contributed to the fall of plaster or other damage complained of by this plaintiff."

The defendant could not lawfully interfere with the possession and quiet enjoyment of the plaintiff's premises and he was liable to the plaintiff if by reason of negligence he failed to protect the plaintiff's property from damage. See *Robbins* v. *Atkins*, 168 Mass. 45; *Winchester* v. *O'Brien*, 266 Mass. 33. It could be inferred from all the evidence that the damage to the plaintiff's stock of goods resulted from the acts of the defendant's agent; and it could also be found that the defendant did nothing to protect the property of the plaintiff or to guard against damage; that the plaintiff "heard noises," "They were hammering all the time" and when the defendant saw the damage he said "he was going to make that good." If the jury believed this testimony they could deal with it as an admission of liability. *Wiseman* v. *Rome*, 250 Mass. 505. *Dennison* v. *Swerdlove*, 250 Mass. 507. *Bernasconi* v. *Bassi*, 261 Mass. 26. Considering all the evidence it was for the jury to say whether the plaintiff suffered damage from the fall of plaster, the rain water, and the "soot entering through the ventilator," and also whether this damage was caused by the negligence of the defendant's agents. A fire occurred on March 7 in the third story above the leased premises, but there was evidence that none of the plaster fell in consequence of this fire, and there was no affirmative evidence that the fire or water then used contributed to any of the damage suffered by the plaintiff. On several occasions subsequent to the fire the rain came "through on the side of the walls and even in the center," the plaster fell and soot and dust came through the ventilator entering the chimney when the men were working "on the roof and on or near this chimney."

The case is to be distinguished from *Wadleigh* v. *Bumford*, 229 Mass. 122, where there was no evidence of fault on the part of the defendant.

*Exceptions sustained.*